UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | No. 09 C 3296 |
| v. | ) | |
| | ) | Judge John W. Darrah |
| MAURICE WILBON, | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

On October 4, 2007, a jury convicted Defendant, Maurice Wilbon, of bank robbery. Before the Court is Defendant's motion under 28 U.S.C. § 2255.

### BACKGROUND

On December 20, 2005, three individuals robbed the First Bank at 2356 South Kedzie in Chicago. The first robber, alleged by the Government to have been Defendant, entered the bank, approached teller Oscar Salgado and asked about a banking transaction. The first robber then drew a gun on Salgado as a second robber entered the bank. The two robbers then took Salgado, two customers and a bank employee, Connie Villagomez, to the vault in the back of the bank. Using keys taken from Salgado, the robbers opened the vault and the safe inside it. A third robber then entered the bank and put money from the safe into an off-white pillowcase. The second robber then sprayed Salgado, Villagomez and the two customers in the eyes with pepper spray. As the robbers left the bank, they were seen by a postal carrier, who was able to see money inside the pillowcase. A bank audit showed the robbers had taken $187,124.

The FBI believed that Defendant was part of the crew of robbers that was responsible for the robbery of the First Bank. Defendant was subsequently incarcerated for an unrelated offense. In October of 2006, the FBI transferred a cooperating witness, "Warren," into the same prison as Defendant. Defendant told Warren that some of his associates had robbed a bank. Defendant was released on October 27, 2006, and Warren was released a short time later.

At the direction of the FBI, Warren continued to contact Defendant outside of prison. Several of the conversations between Warren and Defendant were recorded. Defendant told Warren then he had robbed a couple banks. One robbery Defendant described to Warren was similar to the robbery of the First Bank. Certain details of Defendant's account, such as the sequence in which the robbers entered the bank and took employees and customers to the vault, matched the robbery of the First Bank.

Defendant told Warren that he was planning a bank robbery with unidentified parties. Defendant and Warren also discussed robbing a bank together in Wisconsin. Defendant provided Warren with a checklist showing how the Wisconsin robbery would proceed. The list included the statement, "Upon leaving mace is sprayed."

On December 12, 2006, Agent McCune directed Warren to ask Defendant if he would drive with Warren to Wisconsin. The purported reason for this trip was to case a bank where Warren supposedly had an inside contact. During the trip, the FBI approached Defendant at a restaurant in Wilmette, Illinois. Agent McCune confronted Defendant with bank surveillance photographs and a sketch of a bank Defendant had drawn for Warren. Defendant and McCune spoke at the restaurant for about twenty minutes. Defendant then agreed to accompany McCune to the FBI office.

At the FBI office, Defendant was advised of his *Miranda* rights and signed an Advice of Rights form. Defendant then admitted that he was part of a bank robbery crew and that he had participated in the robbery of the First Bank on Kedzie. Defendant told McCune details of the robbery that matched the First Bank robbery. Defendant described how he had approached the teller, asked about a banking transaction and then drawn an air pistol as the second robber entered. Defendant described how a third robber came in and how they packed money into a bag. Defendant said they may have been seen by a postal carrier as they left the bank. Defendant said that the robbers drove to a friend's house, where they split up the money in the friend's presence.

Defendant's trial began on October 3, 2007. First Bank employees Salgado and Villagomez testified, as did the postal carrier who had seen the robbers leaving the bank. The Government also introduced testimony of Stanford Stogner, who had seen his friend Dahveed Dean, Defendant and a third man come into his house in December 2005, carrying a pillowcase. The three men went into a different room in Stogner's house. Stogner later went into the room and saw bundles of money. Additionally, Warren and McCune testified to the facts recited above.

On October 4, 2007, the jury convicted Defendant of the sole count of the indictment. On February 5, 2008, the Court sentenced Defendant to 225 months' imprisonment.

Defendant filed a timely appeal to the Seventh Circuit. On appeal, Defendant argues that his confession to McCune should have been suppressed because he was intoxicated at the time and because it was involuntary. On February 3, 2009, the Seventh Circuit affirmed Defendant's conviction.

## ANALYSIS

Defendant raises two main claims in his § 2255 motion. He argues that he received ineffective assistance of trial counsel due to several purported errors. Second, he argues that the Government engaged in prosecutorial misconduct during the trial.

### *Ineffective Assistance of Counsel*

In order to prevail on a claim of ineffective assistance of counsel, a petitioner must show (1) that his attorney's performance fell below an objective standard of reasonableness and (2) that the attorney's poor performance prejudiced the outcome of the proceedings. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984) (*Strickland*); *Valenzuela v. United States*, 261 F.3d 694, 698 (7th Cir. 2001) (*Valenzuela*). Review of such a claim is highly deferential to counsel. *Valenzeula*, 261 F.3d at 698. "[T]here is a strong presumption that any decisions by counsel fall within a wide range of reasonable trial strategies." *Valenzeula*, 261 F.3d at 698-99 (quoting *United States v. Lindsay*, 157 F.3d 532, 535 (7th Cir. 1998)). With respect to the second prong, a petitioner must be able to show a reasonable probability that in the absence of the error, the outcome would have been different. *Valenzuela*, 261 F.3d at 699.

The first purported error alleged by Defendant is that his counsel failed to object to statements made by the prosecutors during opening and closing arguments. During opening arguments, the prosecutor told the jury that they would see Defendant's face on shots from the bank surveillance camera. Defendant argues that this statement was prosecutorial misconduct and misstated the evidence. However, it was not error for the prosecutor to tell the jury what he believed the evidence would show. During trial, the jury was shown a photograph from the

4

surveillance video, showing one of the robbers. It was the Government's theory that the photograph showed Defendant. Thus, the statement did not amount to misconduct, and defense counsel's failure to object was not error.

Defendant also argues his counsel should have objected when the prosecutor allegedly misstated the evidence during closing arguments. Specifically, Defendant argues his counsel should have objected when the prosecutor stated that Stogner had testified that Defendant showed up at Stogner's house in December 2005. Defendant argues that the Government never asked Stogner the day, month or year that Defendant showed up at his house. Defendant is incorrect. The Government's questioning of Stogner began by asking him about the events of December 2005. Thus, there was no misstatement of the evidence, and defense counsel's failure to object was not error.

Defendant next argues his counsel was ineffective because she failed to call Nidia Rubalcava, a bank employee who was present during the robbery, as a defense witness. Approximately eighteen months after the robbery, Rubalcava was shown a photo lineup containing Defendant's photo and picked out a different person as the robber. Defendant argues that his counsel should have called Rubalcava so that she could testify that she was unable to pick Defendant out of a lineup and that she picked a different person instead.

Defendant cannot show that counsel's performance in this regard fell below an objective standard of reasonableness. During trial, it was noted several times that none of the bank employees present during the robbery had identified Defendant as one of the robbers. Defense counsel made this point again during closing arguments. Therefore, it was not necessary for defense counsel to call Rubalcava as a witness to put this information before the jury.

Furthermore, putting Rubalcava, a victim of the robberies, on the stand would have presented a range of potential drawbacks for Defendant. Thus, Defendant cannot overcome the presumption that defense counsel's decision not to call Rubalcava was a reasonable strategic decision. Finally, given the overwhelming evidence of guilt presented by the Government, including Defendant's confession, Defendant cannot show that the outcome of the trial would have been different had defense counsel called Rubalcava to the stand.

Defendant next argues that his counsel was ineffective for failing to object to Agent McCune's testimony regarding his interview of Defendant. Defendant argues that McCune's testimony regarding the interview was based on notes of the interview taken by another FBI agent, Mark Prejsnar. Therefore, Defendant argues, he should have been able to confront and cross-examine Prejsnar at trial regarding the notes. Defendant's argument is based on the incorrect factual premise that McCune's testimony was based on Prejsnar's notes. The notes were not introduced as evidence at trial. Defense counsel had an adequate chance to cross-examine McCune. Therefore, defense counsel did not err in failing to make the objection now raised by Defendant.

Defendant next argues his trial counsel was ineffective because she failed to object to the introduction of "other crimes" evidence. Agent McCune testified about an earlier attempt by Defendant and other members of the crew to rob the First Bank in October 2005, which was called off when marked police cars were spotted in the area. Defense counsel raised various objections to this testimony, but the Court found that evidence of the aborted robbery was admissible. During his testimony, Agent McCune identified five members of the robbery crew.

At that point, the Court called a sidebar due to concerns that McCune would go beyond the limitations agreed to by the parties. At the Court's direction, the Government limited its questioning of McCune to ensure that his testimony would stay within these limits.

Defendant argues that defense counsel should have pointed out that evidence of other crimes had come in because McCune had identified more people than were involved in the attempted and successful robberies of First Bank. However, as noted above, defense counsel had already made objections to this evidence. It is unclear what more she could have done. Thus, Defendant has failed to show that counsel's performance fell below an objective standard of reasonableness or that he was prejudiced by any failure on her part.

Finally, Defendant argues that his attorney was ineffective for failing to point out that McCune gave perjured testimony during the trial and an earlier suppression hearing. Defendant claims McCune lied when he testified at trial and during the suppression hearing that Defendant was cooperative with agents during his confession. Defendant argues that this testimony conflicts with a statement in the Presentence Investigation Report ("PSR") that McCune told the Probation Officer that Defendant was not cooperative during the investigation.

Defendant fails to show any conflicting testimony by McCune. McCune's statement to the Probation Officer reflects that Defendant was not assisting law enforcement in further investigation and prosecution of other members of the robbery crew. It is not inconsistent with McCune's testimony regarding Defendant's demeanor during his confession.

Therefore, Defendant has failed to show that his trial counsel was in any way ineffective.

*Prosecutorial Misconduct*

Defendant's claims of prosecutorial misconduct are procedurally defaulted. Before a court will review the merits of a § 2255 petition, the issues must have been raised on direct appeal; otherwise, it is procedurally defaulted. *Coleman v. United States*, 318 F.3d 754, 760 (7th Cir. 2003). Petitioner raises his prosecutorial misconduct claim for the first time in this motion.

To raise a procedurally defaulted claim, a petitioner must show cause for the procedural default and actual prejudice. *Barker v. United States*, 7 F.3d 629, 632 (7th Cir. 1993). Here, Defendant has not shown either cause or prejudice. Thus, he is barred from raising these claims unless he can prove actual innocence. *Bousley v. United States*, 523 U.S. 614, 620-23 (1998). Here, Defendant has not attempted to make that showing.

## CONCLUSION

For the reasons stated above, Defendant's motion under § 2255 is denied.

Dated: November 19, 2009

JOHN W. DARRAH
United States District Court Judge